

Fish & Richardson P.C.
222 Delaware Avenue
17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

302 652 5070 main
302 652 0607 fax

**VIA ECF**

October 30, 2018

**REDACTED VERSION**

The Honorable Maryellen Noreika
J. Caleb Boggs Federal Building
844 N. King Street
Unit 19, Room 4324
Wilmington, DE 19801-3555

Case:   *Chemours Company FC, LLC v. Daikin Industries, Ltd. et al*
        USDC-DE - C.A. No. 17-01612-MN

Re:     Joint Letter Regarding Discovery Dispute

Dear Judge Noreika:

The parties write regarding three discovery dispute issues scheduled for hearing on November 1, 2018.

fr.com

**Chemours Argument.** Chemours raises two issues: Daikin's failure to meaningfully engage in document production, and its refusal to provide English translations of key documents. This case is six months into discovery, with about five months remaining. Chemours initiated the search term exchange process contemplated in the local rules on May 10 by providing its search terms to Daikin. When Daikin finally responded on July 27, Chemours incorporated Daikin's additional searches and began document review. On July 31, Chemours began its rolling production and produced over 12000 pages of documents (about 2000 documents) and will complete its document review within a few weeks. Daikin first disclosed its own search terms on July 27 and the parties were able to agree on terms for Daikin by August. Two months later, in October, Daikin unilaterally removed six critical search terms from its list and told Chemours it had not yet started the document review process. Daikin has stated it will not begin its review process until its search terms are finalized, including resolving the current dispute. To date, Daikin has produced only 108 total documents: 101 are Daikin's core technical documents; and seven were identified in interrogatory responses. Of those documents, 12 are in Chinese, for which Daikin will not provide certified translations. With the close of fact discovery five months away, Daikin's delay in reviewing and producing documents and in providing certified translations of foreign-language documents, is prejudicial and significantly concerning to Chemours.

Daikin's complaint about Chemours' interrogatory response is unfounded. Chemours has substantively responded to the interrogatory on Chemours' conception and reduction to practice. Chemours provided a 3-page narrative, detailing its predecessor company's development of the technology, including the individuals involved and the general timeline of invention, and produced a number of supporting documents. Chemours will comply with its obligation to supplement its response as new information becomes available, including any additional documents and the depositions of the inventors (all of whom retired from Chemours' predecessor company years ago). Daikin, however, is refusing to begin document production, which is very prejudicial to Chemours knowing that depositions are only a few months away.

**Daikin's Refusal to Provide Critical ESI Search Terms:** Daikin refuses to run six searches with no meaningful proposal to address the ensuing deficiencies in the scope of its document collection. In July, Daikin provided to Chemours its list of 24 search terms and a month later the parties had reached agreement on the final list. Daikin subsequently approached Chemours with concerns over the hit count for *one* search; the parties compromised by mid-September, resolving all issues on Daikin's search terms. On October 1, Daikin informed Chemours that the agreed-upon search terms returned an "unreasonable"[1] number of documents and unilaterally deleted *six* of the twenty-four agreed-upon searches, including searches directed to the Accused Products.[2] These terms included the Accused Product numbers in proximity with "NP" or "Neoflon,"[3] which are comparable to searches Chemours ran on its own documents.[4] These were also searches Daikin originally proposed, undoubtedly recognizing their relevance. Now, the only

---

[1] Daikin refuses to provide hit counts for these specific terms, instead citing hit counts for all of its searches combined.
[2] *See* Ex. 1, 10/1/18 Email fr Damon to Fiorella, "RE: Chemours/Daikin: ESI Search Terms."
[3] *Id.*; *see* Ex. 2, Daikin's original search terms reflecting agreed-upon modifications; *see* Ex. 3, Daikin's proposed revisions, 10/1/18.
[4] Ex. 4, Chemours' search terms with Daikin's proposed modifications (highlighting added).

remaining searches that mention any of the Accused Products include a specific customer name in close proximity. Such searches would exclude, for example, the development documents for the Accused Products and any internal marketing assessments of the Accused Products. Chemours explained that the remaining searches do not adequately address a number of Chemours' RFPs[5] and requested that Daikin reinsert the previously agreed-upon terms or propose narrower searches.[6]

Daikin refused. Instead, Daikin seeks to shift the burden to Chemours to devise searches to address these RFPs—RFPs that Chemours already agreed would be covered by the original searches—when Chemours has no knowledge of Daikin's documents or understanding of what made the results "unreasonable." It is Daikin's obligation to produce documents responsive to Chemours' RFPs. Daikin chose the electronic searching route to do so. It cannot then try to switch the burden onto Chemours to find Daikin's documents for Daikin. Given the upcoming close of fact discovery, Chemours requests the Court require Daikin to either reinsert the agreed-upon searches it deleted, or promptly propose searches that will return documents responsive to Chemours' RFPs and immediately begin document review and production.

**Daikin's Refusal To Provide Certified Translations:** Daikin has answered interrogatories citing Chinese documents under Fed. R. Civ. P. 33(d) and has produced Chinese documents as part of its Core Technical Documents. Despite repeated requests from Chemours, Daikin has refused to provide certified translations of these 13 documents and has refused to confirm it will provide such translations of any documents on which it affirmatively relies going forward.

Courts in this District and others have held that the producing party has an obligation to provide certified translations for documents on which the party intends to affirmatively rely, such as, for example, documents cited in an interrogatory pursuant to Rule 33(d). *See Invensas Corporation v. Renesas Electronics Corporation*, 2013 WL 12146531 at *5-6 (D. Del. May 8, 2013); *E&J Gallo Winery v. Cantine Rallo S.p.A.*, No. 04-5153, 2006 WL 3251830, at *5 (E.D. Cal. Nov. 8, 2006). Sound policy supports these decisions—in citing documents pursuant to Rule 33(d), the producing party is making the affirmative choice to identify documents in lieu of a narrative response, and thus bears the responsibility of providing documents from which the response can be clearly ascertained—meaning, in English. Chemours sent this authority to Daikin to try and resolve the issue without troubling the Court; unfortunately, Daikin has provided no contrary authority explaining its refusal to provide translations.[7]

Daikin's Core Technical Documents are analogous to documents cited under Rule 33(d). According to the District of Delaware's Default Discovery Standard, Daikin is required to produce core technical documents sufficient to show the functionality of the accused products. Defendants chose the manner and documents by which to fulfill their discovery obligation, and thus the burden to provide translations for these documents remains with them. For the same reasons that the Court requires a party to provide translations of documents cited under Rule 33(d), the Court should also require a party to provide translations of documents produced and relied on as Core Technical Documents. It is only fair that Chemours knows exactly what Daikin contends its products are at this stage of the litigation. That is precisely

---

[5] *See* Ex. 1 at 3, identifying RFPs.
[6] Daikin also removed searches directed to "Melt Flow Rate (MFR)" and "fluorination", two key issues in this case. *See* Exs. 1-3; *see also* '609 and '431 patents (D.I. 1-1, 1-2).
[7] *See* Ex. 5, Damon Letter to Fiorella Re Foreign Language Documents, August 1, 2018 (citing case related to translation obligations under Fed. R. Civ. P. 34, not Fed. R. Civ. P. 33(d)).

why the local rules require this early exchange. Daikin's refusal to do so here is puzzling, given there are so few documents that Daikin's litigation counsel almost certainly has access to English language versions in determining what to cite as a core technical document.[8]

In response to Chemours' requests, Daikin cited cases that involve translation obligations for documents produced under Fed. R. Civ. P. 34. But, as has been repeatedly explained, Chemours does not contend that Daikin must provide certified translations for all such documents.[9] The only documents Chemours seeks certified translations for are those that Daikin affirmatively relies on to support its arguments—such as those it relies on to show the functionality of its accused products, or those it relies on in interrogatories.

Daikin offers to provide certified translations of the foreign-language Core Technical Documents and Rule 33(d) documents, only if Chemours agrees to not request translations for any other documents in the future. Chemours cannot agree to such an unreasonable condition requiring a blanket prohibition to seek translations should the need arise.

**Chemours' Interrogatory Response:** On September 27, 2018, Chemours supplemented its response to Dakin's conception and reduction to practice interrogatory with a 3-page narrative response. Chemours explained: how its predecessor company, DuPont, began developing the technology in around 2002; the development work by the inventors from 2002-2003 to develop the key properties of the invention; and cited documents showing that the prototypes embodying the invention were made and tested by early 2003.[10] The patent was then filed May 14, 2003. Chemours cited eight documents supporting its development story. To the extent new documents and evidence become available to Chemours, it will fulfill its obligations under the Rules to supplement its discovery responses. *See* Fed. R. Civ. P. 26(e). The inventor depositions have not even been noticed. Daikin's request, at this juncture of the litigation, for an adverse ruling or a limitation of what Chemours can assert for conception and reduction to practice dates is unfounded.[11] *See LifeNet Health v. LifeCell Corp.*, 2014 WL 4162113, at *3-4 (E.D. Va. Aug. 19, 2004); *MasterMine Software, Inc. v. Microsoft Corp.*, 2015 WL 12778417, at *4 (D. Minn. Aug. 5, 2015). Fact discovery is not complete and Daikin can articulate no prejudice it has suffered.

Daikin's demand for "firm" dates is also premature. Daikin's cases address compliance with the local rules of N.D. Cal. *See, e.g., Harvatek Corp. v. Cree, Inc.*, No. C. 14-05353, 2015 WL 4396379, at *2 (N.D. Cal. July 17, 2015) (analyzing compliance with local patent rules). No such similar local rule exists here. Chemours understands its obligation to provide conception and reduction to practice evidence and will do so timely under the schedule set out by this Court in the Scheduling Order.[12] As to prejudice, the only ongoing process is claim construction. Daikin has articulated no reason why a "firm date" for conception/reduction to practice has any impact, particularly when Daikin already knows the 2002-2003 time period.

---

[8] Chemours also explained that if Daikin has translations already, it has an obligation to produce those. *See* Ex. 6, Fiorella Letter to Daikin Re Discovery Documents, July 30, 2018.
[9] *See* Ex. 7, 10/18/18 Email fr Hufnal to Mayo, "RE: Chemours/Daikin: ESI Search Terms."; *see also* Ex. 8, letters to Daikin requesting translations.
[10] *See* Ex. 9, Chemours' Supplemental Responses to Defendants' First Set of Interrogatories (Nos. 1, 3, 4, and 6), citing CHEM00014226 at CHEM00014227 (attached as Ex. 11).
[11] *See*, Ex. 10, 10/8/18 Damon Letter to Fiorella, "Chemours' Response to Interrogatory No. 3."
[12] *See* D.I. 27, ¶5 (close of fact discovery is March 28, 2019).

**Daikin's Argument**

Daikin Industries, Ltd. and Daikin America, Inc. (collectively, "Daikin") have engaged in good faith discussions with Chemours Company FC, LLC ("Chemours") to try to reach informal resolutions to several discovery disputes, but unfortunately could not resolve them without the Court's intervention. Daikin addresses the parties' disputes below:

1. **Chemours must identify invention dates for the patents-in-suit.** Chemours has refused to identify highly material invention dates for the patents-in-suit, U.S. Patent Nos. 7,122,609 ("'609 patent") and 8,076,431 ("'431 patent"). Invention dates touch many issues in patent cases, from claim construction, which is assessed at the time of the invention, to invalidity over the prior art, which, under pre-AIA law, may be critically impacted by invention dates.

For these reasons, Daikin propounded Interrogatory No. 3 in May 2018, asking Chemours to "identify[] the dates of conception and reduction to practice" for each Asserted Claim. Chemours has refused to commit to firm invention dates beyond "no later than" May 14, 2003, the filing date of the earliest application that led to the patents-in-suit. (Daikin Ex. 12 at 7.) Daikin asked Chemours to either commit to firm invention dates, or to agree not to later assert any pre-filing invention dates. Chemours refused to do either, because "the parties are still in the document review and production phase, and have taken no depositions yet." (Daikin Ex. 13 at 1.) Chemours cannot explain how "the information available to" Chemours concerning *its own patents* could be affected by *Daikin's* document production or depositions. (*Id.*) Nor can it. No Daikin document or witness can inform Chemours about its own invention dates.

Chemours has no excuse for refusing to commit to firm invention dates immediately. It has had exclusive access to all the documents and information needed to determine invention dates since before this litigation. Indeed, a patent owner "should already know the conception date of a patented invention *prior to commencing litigation*." *Harvatek Corp. v. Cree, Inc.,* No. C 14-05353 WHA, 2015 WL 4396379, at *3 (N.D. Cal. July 17, 2015) (emphasis added). When required to identify invention dates in discovery, a patent owner must "assert a specific date of conception, not a date range," among other things. *Id.* at *2; *see also Thought, Inc. v. Oracle Corp.*, No. 12-cv-05601-WHO, 2015 WL 5834064, at *5 (N.D. Cal. Oct. 7, 2015); *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-cv-01647-YGR (JSC), 2015 WL 335842, at *7 (N.D. Cal. Jan. 26, 2015). This guards against "the possibility of abuse in the form of theories contrived to get behind later-disclosed prior art." *Harvatek*, 2015 WL 4396379, at *3. For these and other reasons, patent owners who hedge on invention dates are properly compelled to assert firm invention dates. *See, e.g.*, *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 9179, 2017 WL 1862646, at *5 (N.D. Ill. May 9, 2017).[1] Whether required by Fed. R. Civ. P. 26, 33, and 37 or a Local Patent Rule does not matter; Chemours must identify invention dates now, and its supplemental interrogatory response does not identify those dates.

---

[1] In Chemours's cited cases, the patent owners did not simply parrot the earliest filing date on the face of a patent and allege conception or reduction to practice "no later than" that filing date, as Chemours tries to do here. *MasterMine Software, Inc v. Microsoft Corp.*, No. 13-CV-971 (PJS/TNL), 2015 WL 12778417, at *4 (D. Minn. Aug. 5, 2015); *LifeNet Health v. LifeCell Corp.*, No. 2:13CV486, 2014 WL 4162113, at *4 (E.D. Va. Aug. 19, 2014).

Keeping invention dates as a moving target prejudices Daikin's ability to prepare its defenses. In fact, in the process of preparing this joint letter, Chemours has now alleged a *brand-new reduction to practice date* ("early 2003") that is neither supported by the cited documentation dated July 2003 (Chemours Ex. 11) nor identified in Chemours's supplemental interrogatory response, which vaguely mentions "middle of 2003" (Daikin Ex. 12 at 9). Chemours should immediately supplement its response to Daikin's Interrogatory No. 3 to provide any alleged pre-filing conception and reduction to practice dates, or to confirm that the earliest possible invention date is May 14, 2003.

**2.     Daikin is not required to translate all of its foreign-language documents.**
On June 29, 2018, Daikin produced core technical documents, as kept in the ordinary course of business, under the Default Standard for Discovery, ¶ 4.b. A few core technical documents that came from Defendant Daikin Industries, Ltd., a Japanese corporation, are not in English. Chemours expressed surprise at receiving foreign-language documents and demanded that Daikin pay for certified translations of these documents (and others). Daikin resisted because of the large and disproportionate costs of translating hundreds if not thousands of documents.

The general rule is clear: Foreign parties need not translate the documents they produce in U.S. litigation. *In re Puerto Rico Elec. Power Auth.*, 687 F.2d 501 (1st Cir. 1982). Receiving parties properly bear the cost of translations. *Id.* at 505-10; *see also* Chemours Ex. 13 at 1-2 (collecting and quoting cases holding that foreign parties need not pay for translations). Chemours has not identified any contrary precedent, for core technical documents or any others.

The sole exception arises when a party cites documents instead of giving a narrative response to an interrogatory under Fed. R. Civ. P. 33(d). *Invensas Corp. v. Renesas Elecs. Corp.*, No. 11-448-GMS-CJB, 2013 WL 12146531, at *5 (D. Del. May 8, 2013) (discussing *Puerto Rico*, 687 F.2d at 505-10). The justification is that in such a case, the responding party obtains a benefit by citing documents rather than providing the requested information in narrative form, as Rule 33 usually requires. *Id.* at *6. Thus, because the responding party enjoys a benefit, it should bear the cost of translating the cited documents. *Id.*

Even though Daikin strongly maintains that Chemours has no right to demand translations, Daikin sought to avoid bothering the Court over this dispute by offering to translate a handful of core technical documents and documents cited under Rule 33(d), if Chemours agreed not to demand other translations (other than Rule 33(d) documents). (Daikin Ex. 14 at 2.) Chemours represented that this offer would resolve the dispute on October 18, 2018 at 9:31 AM. (*Id.* at 3.) But then Chemours later refused to accept this offer. (*Id.* at 1.) Just as Daikin suspected, Chemours broadly maintains that may force Daikin to pay for translations of not just a few core technical or Rule 33(d) documents but *every single document on which Daikin might rely for any purpose*. (*Id.*) Daikin has no choice but to seek a ruling that Daikin need not pay for translations beyond those cited in interrogatory responses under Rule 33(d).

A ruling as Daikin requests aligns with well-established law, and Chemours has provided no law to the contrary. In fact, the law recognizes the clear distinction between Fed. R. Civ. P. 34 (which does not require translations) and Rule 33(d) (which may). *Invensas*, 2013 WL 12146531, at *5-6. The justification for the Rule 33(d) exception does not apply outside of Rule 33(d). For example, as to core technical documents, accused infringers obtain no benefit from

producing core technical documents under the Default Standard, which, unlike a Rule 33 interrogatory, does not require a narrative. The Default Standard simply requires production of documents, just like any Rule 34 request. The patentee benefits from receiving those documents, just as any party who receives documents produced under Rule 34. Receiving parties properly bear the costs of paying for translations. *Id.* at *6. Chemours's novel position to the contrary opens the door for future harassment of and discrimination against foreign parties in U.S. courts. Courts have already rejected Chemours's position. *Id.* at *5. No court has ever imposed such an unfair burden on a foreign party. This Court should reject Chemours's invitation to be the first.

### 3. **Chemours should propose alternate ESI search terms to reduce Daikin's burden.**

On August 28, 2018, Daikin and Chemours provisionally agreed to a list of ESI search terms to assist with Daikin's identification of potentially responsive ESI. (*See* Daikin Ex. 15.) At that time, Daikin was collecting documents. When Daikin ran the terms against its full collection in mid-September, the search returned about 480,000 documents. Daikin estimates it would cost about $250,000 to review this many documents.

As the terms were clearly overbroad, Daikin approached Chemours with modified terms that would identify potentially responsive ESI but at only about 150,000 hits, a still too large, but more reasonable, burden for Daikin. (*See* Daikin Ex. 14 at 15-16.) Among the revisions, Daikin requested, consistent with Paragraph 5.b. of the Default Standard, that the terms be revised so they did not search accused product names by themselves. (*Id.* at 16.) Paragraph 5.b. states that a search of an accused product name alone is overbroad and improper. Nonetheless, Chemours disagreed, and now refuses to participate in narrowing the search terms and instead, without offering solutions, contends that the modified terms are deficient. (*Id.* at 8.) Chemours contends, without support, that the modified terms are deficient because some developmental documents might be excluded under the revised search terms. Overbroad searches would clearly return more documents; however, the Default Standard, recognizing that fact, still maintains that search of an accused product name alone is overbroad. Nevertheless, Daikin, in an effort to ease Chemours' concerns, has invited Chemours to propose terms to address any perceived concerns on multiple occasions. (*Id.* at 2, 7, 9, 11-12.) Chemours refused, claiming that it is "not in a position to propose modified terms for [Daikin's] documents." (*Id.* at 8.) This despite Paragraph 5.b. of the Default Standard providing that "a requesting party may request…10 additional terms ..." Contrary to its recent refusal to cooperate over search terms, Chemours has already proposed four of its own terms.

Again, Chemours is neglecting the standards of necessity and proportionality by making unreasonable demands. Reviewing nearly half a million documents at an estimated cost of a quarter million dollars is disproportionate to the needs of this case. That is precisely why the Default Standard proscribes the exact product-name-only search Chemours contends must be done. To provide perspective, Chemours reported only about 74,000 search hits and has only produced under 2,000 documents in total. Daikin offered a proposed revised set of search terms that reduced the number of search hits to about 150,000. (*See* Daikin Ex. 16.) While Daikin believes this volume, which is about double what Chemours deemed reasonable, is still excessive, it is a good starting point for the parties to work from to narrow the terms to obtain a reasonable number of search hits. Thus, Daikin asks that the Court order Chemours to meet and confer with Daikin and provide search terms that equalize the parties' burdens.

Respectfully,

*/s/ Martina Tyreus Hufnal*

Martina Tyreus Hufnal

cc:     All Attorneys of Record – via e-filing