# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHEMOURS COMPANY FC, LLC, <br><br> Plaintiff, <br> v. <br><br> DAIKIN INDUSTRIES, LTD and DAIKIN AMERICA, INC., <br><br> Defendants. | C.A. No.: 17-1612-MN-CJB <br><br> **FILED UNDER SEAL** |

## LETTER TO THE HONORABLE JUDGE
## CHRISTOPHER J. BURKE REGARDING DISCOVERY DISPUTE

OF COUNSEL:

Dexter J.S. Whitley (*pro hac vice*)
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
(404) 892-5005
whitley@fr.com

Juanita R. Brooks *(pro hac vice)*
Meghana Thadani *(pro hac vice)*
FISH & RICHARDSON P.C.
7 Times Square
20th Floor
New York, NY 10036
thadani@fr.com
brooks@fr.com

Megan Chacon *(pro hac vice)*
FISH & RICHARDSON P.C.
12860 El Camino Real
Suite 400
San Diego, CA 92130
chacon@fr.com

FISH & RICHARDSON P.C.

Martina Tyreus Hufnal (#4771)
Douglas E. McCann (3852)
Jeremy D. Anderson (#4515)
Nitika Gupta Fiorella (#5898)
Kelly Allenspach Del Dotto (#5969)
Grayson P. Sundermeir (#6517)
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE  19899-1114
(302) 652-5070
hufnal@fr.com; dmccann@fr.com
janderson@fr.com; fiorella@fr.com
kad@fr.com; sundermeir@fr.com

*Attorneys for Plaintiff*
**CHEMOURS COMPANY FC, LLC**

Dated:  November 24, 2021

Dear Magistrate Judge Burke:

Chemours seeks 1000-kilogram samples of each Daikin Accused Product and the opportunity to serve expert reports addressing testing of those samples. In patent infringement cases, samples of accused products are indisputably relevant. *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc*., No. 15-819-LPS-CJB, 2016 WL 675553, at * 1 (D. Del. Feb. 12, 2016). Daikin, however, refuses to produce representative samples of the Accused Products, instead only offering insufficient quantities of contaminated material. As opening expert reports are due December 6 and Daikin has not produced Accused Product samples, Chemours requests four weeks from the time of such sample production to serve any reports addressing their testing.

**Testing the Accused Products.** The Daikin Accused Products are three resins used to coat and insulate communication wires: NP-1108, NP-1109, and NP-3180. These resins infringe claims directed to a specific fluoropolymer with a unique combination of properties: (1) a minimal concentration of alkali metal salt, (2) a high melt flow rate of about 30±3 g/10 min, and (3) a low number of unstable end groups, that can be melt extruded onto a wire at high speeds while minimizing common defects known as "sparks" (gaps exposing the wire) and "lumps" (protrusions). D.I. 153 at 3. Testing the properties of the Accused Products requires hundreds of kilograms of resin. For example, wire line testing for sparks and lumps involves extruding resin over hundreds of thousands of feet of wire. Ex. A (USP 7,122,609) at 1:17-28 (explaining that industry standard UL 444 for spark failures and industry quality criteria for lumps are measured over 13.7 kilometers (45,000 feet)); 4:2-15 (describing that spark and lump tests reported in the patent reflect the average of three, 13.7 km or 45,000 foot runs); Ex. B (DKN11055) at DKN0011056 (███████████████████████████████████████████████). Ex. D (DIL007699) at DIL007702, DIL0007710.

**Daikin's Refusal to Produce Samples.** On April 26, 2018, Chemours requested "[s]amples of Accused Products…in an amount sufficient to test the properties thereof." Ex. E (RFP No. 25). On May 29, 2018, Daikin stated that it would make samples available for inspection. Ex. F (Response to RFP No. 25). The Court stayed the case in 2018. After the stay was lifted, on October 8, 2021, Chemours specified that it sought "[s]amples (1,000 kilograms) of each Accused Product." Ex. G (RFP No. 54). On October 25, Chemours explained that this request clarified the 2018 request for samples and asked Daikin to confirm that it would produce the requested samples by October 29. Ex. H (11/01/21 Whitley email to Furby). Until November 8, Daikin refused to state whether it would or would not produce Accused Product samples. Ex. I (11/08/21 Whitley ltr to Evans). On November 8, Daikin indicated that "it will produce an approximately 5kg sample of each of the Accused Products." Ex. L (Response to RFP No. 54). On November 11, however, Daikin clarified that any material it produced (5kg or 20kg) "may be contaminated." Ex. J (11/11/21 Prescott email to Furby).

Daikin's offer of 5-20 kilograms of contaminated material is a refusal to provide the requested Accused Product samples. *First*, the material that Daikin has offered to produce "█

███████████████████████████████████████████████ "may be contaminated." Ex. J (11/11/21 Prescott email to Furby). As such, it is not representative of the Accused Products. It is the Accused Product, not contaminated materials, which are relevant to this case. Contamination is especially problematic here where the asserted claims include limitations related to the chemical composition of the resin such as "less than 5ppm alkali metal ion." Ex. K (8,076,431 Patent) at 2:62-67, 3:18-27 (describing measurement of alkali metal ion content); claim 4. **Second,** 20 kilograms of Accused Product is insufficient to perform comprehensive testing of the properties of those products. The wire testing used to evaluate these resins, discussed above, as well as in the patent and Daikin's documents, requires hundreds of kilograms per resin. Despite the direct relevance of the samples and the reasonableness of the requested quantities in light of how the Accused Products are tested, Daikin has offered no justification for its complete refusal to provide the requested samples. Chemours requests that Daikin be ordered to produce the requested samples as soon as they are available.

**Expert Reports Addressing Sample Testing.** In an effort to obtain samples prior to the November 10 close of fact discovery, Chemours timely served Requests for Production Nos. 25 and 54. Ex. E (RFP No. 25); Ex. G (RFP No. 54). Given the volume of Daikin's resin business Chemours had no reason to believe that production of the requested samples ███████ ████████████████████████████████████. Chemours timely and repeatedly followed up with Daikin about whether it would produce the requested samples. Ex. H (11/01/21 Whitley email to Furby); Ex. I (11/08/21 Whitley ltr to Evans). It was not until November 8 that Daikin stated that it would not produce the requested samples. Ex. I (11/08/21 Whitley ltr to Evans); Ex. L (Response to RFP No. 54).

If Daikin had timely produced the relevant and requested samples, Chemours would have received them by the close of discovery. Chemours would have had approximately four weeks – from November 10 to December 6 – to test each sample and prepare expert reports analyzing the testing. Daikin, however, refused to produce samples necessary for any testing. Thus, Chemours cannot submit opening reports addressing sample testing by December 6 and good cause exists to provide a later opportunity for those reports. Chemours requests four weeks from the time of receipt of samples from Daikin to prepare any reports addressing testing of the samples.

Respectfully,

*/s/ Martina Tyreus Hufnal*

Martina Tyreus Hufnal


cc:   All Attorneys of Record – via e-filing

3